

# The Attorney General of Texas

June 13, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gary Thompson
Chairman
County Affairs Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No.   JM-327

Re:  Whether  a  commissioners
court  may  expend  funds  for
operation and maintenance of a
county hospital under article
4437e-2, V.T.C.S.

Dear Representative Thompson:

You ask whether section 4 of article 4437e-2, V.T.C.S., which also is cited as the Hospital Project Financing Act, precludes the use of county funds by a commissioners court either to pay the principal of or interest on bonds issued under article 4437e-2 or to support the operation and maintenance of a general care hospital constructed with the proceeds from the sale of bonds issued pursuant to the authority of article 4437e-2. It is our opinion that, when a hospital project is financed by bonds issued under article 4437e-2, the issuer of the bonds may use only revenue derived from the operation of the hospital project, the proceeds of the bonds themselves, or revenues provided by a nonprofit corporation to pay the principal of or interest on such bonds or to pay any cost of operation of the hospital project.

The language of the Hospital Project Financing Act and the bill analysis prepared during its enactment indicates that a major purpose of the act is the provision of less costly financing to aid nonprofit hospital corporations in the construction or improvement of hospital facilities and thereby the promotion of the health, safety, and general welfare of the people. See V.T.C.S. art. 4437e-2, §2; Bill Analysis to Senate Bill No. 243, Acts 1975, 64th Leg., prepared by House Committee on Intergovernmental Affairs, filed in Bill File to Senate Bill No. 243, Legislative Reference Library. Within the meaning of that act, an issuer is a city, county, hospital authority, or hospital district, and a hospital project includes any combination of one or more of the following:

> (1)  any land, buildings, equipment, machinery, furniture, facilities, and improvements;

> (2)  any structure suitable for use as a hospital, clinic, health facility, extended care

p. 1494

facility, out-patient facility, rehabilitation or recreation facility, pharmacy, medical laboratory, dental laboratory, physicians' office building, or laundry or administrative facility or building related to a health facility or system;

(3)  any structure suitable for use as a multi-unit housing facility for medical staff, nurses, interns, other employees of a health facility or system, patients of a health facility, or relatives of patients admitted for treatment or care in a health facility;

(4)  any structure suitable for use as a support facility related to a hospital project such as an office building, parking lot or building, or maintenance, safety, or utility facility, and related equipment;

(5)  any structure suitable for use as a medical or dental research facility, medical or dental training facility, or any other facility used in the education or training of health care personnel;

(6)  any property or material used in the landscaping, equipping, or furnishing of a hospital project and other similar items necessary or convenient for the operation of a hospital project; and

(7)  any other structure, facility, or equipment related to, or essential to, the operation of any health facility or system except that a hospital project shall not include any nursing home licensed as such, or which would be required to be licensed as such, under the authority of the State of Texas. . . .

See V.T.C.S. art. 4437e-2, §3. Hence, a county may be an issuer, and the land, buildings, equipment, furnishings, and landscaping of a general acute care hospital are a hospital project.

Section 4 of article 4437e-2, provides that

[b]onds or notes issued in accordance with the provisions of this Act shall not be deemed to constitute general obligations of the State of Texas, the issuer, or any other political

subdivision or agency of this state or a pledge of the faith and credit of any of them but such bonds or notes shall be payable solely from revenues of the hospital project for which they are issued and/or from such other revenues as may be provided by a nonprofit corporation. No money of the State of Texas or any political subdivision or agency of this state, whether raised from taxation or any other source, except for revenue of the hospital project being financed with the bonds, shall ever be used to pay the principal of, redemption premium, if any, or interest on any revenue bonds or notes or refunding bonds or notes issued under this Act. All such revenue bonds or notes shall contain on the face thereof statements to the effect (a) that neither the State of Texas, the issuer, nor any political subdivision or agency of the State of Texas shall be obligated to pay the same or the interest thereon except from the revenues pledged thereto and (b) that neither the faith, credit, nor the taxing power of the State of Texas, the issuer, or any political subdivision or agency thereof is pledged to the payment of the principal of, redemption premium, if any, or interest on such bonds or notes. The issuer shall not be authorized to incur financial obligations under this Act which cannot be paid from the proceeds of the bonds or notes, revenues derived from operating a hospital project, or any other revenues as may be provided by a nonprofit corporation, in accordance with the provisions of this Act. In no event shall any appropriation be made by the Legislature of Texas or any issuer to pay all or any part of any cost of a hospital project or any operating cost of such hospital project in accordance with the provisions of this Act. The issuer shall be paid, out of money from the proceeds of the sale and delivery of its revenue bonds or notes issued in accordance with the provisions of this Act, an amount of money equal to all of the issuer's out-of-pocket expenses and costs in connection with the issuance, sale, and delivery of such bonds or notes, including, without limitation, all financing, legal, printing, and other expenses and costs incurred in issuing such bonds or notes, plus an amount of money equal to the compensation paid any of such issuer's employees for the time such employees spent on activities related to the

> issuance, sale, and delivery of such bonds or notes. All such costs and expenses shall be deemed to be a 'cost' of a hospital project as defined in Section 3(c) of this Act. (Emphasis added).

Your first question asks whether county funds may be used to retire an existing indebtedness created for the construction of a hospital under article 4437e-2. The language of section 4 expressly provides that no money of the county, whether raised from taxation or any other source, except for revenue of the hospital project being financed with the bonds, may ever be used to pay the principal of, redemption premium, if any, or interest on any revenue bonds or notes or refunding bonds or notes issued under the Hospital Project Financing Act.

Your second question asks whether section 4 of article 4437e-2 precludes the use of county funds to support the operation and maintenance of a hospital constructed with the proceeds from the sale of revenue bonds issued pursuant to the authority of the Hospital Project Financing Act.

The commissioners courts have only the powers that are conferred on them by the constitution and statutes, either expressly or by necessary implication. See Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. 1948); Childress County v. State, 92 S.W.2d 1011, 1016 (Tex. 1936). Article 4478, V.T.C.S., confers on a commissioners court of any county the power to establish and maintain a hospital. The powers granted a commissioners court by article 4478 include, among other things, (1) the power to issue county bonds approved by the voters to provide funds for establishing, enlarging, or equipping a hospital and (2) the power to assess, levy, and collect the taxes on real and personal property in the county that the commissioners court deems necessary to provide the funds for maintenance and for all necessary expenditures of a county hospital established and maintained under that statute. The power granted a commissioners court for the operation and maintenance of a hospital under that act is not applicable to the operation and maintenance of a hospital financed and constructed under article 4437e-2.

Section 4 of the Hospital Project Financing Act expressly provides that the issuer is not authorized to incur financial obligations under that act that cannot be paid from the proceeds of the bonds or notes, revenues derived from operating the hospital project, or revenues provided by a nonprofit corporation. That provision has the effect of excluding the use of county funds that are derived from a source other than those named sources.

Senate Bill No. 243 of the Sixty-fourth Legislature was amended in the Senate to delete a provision in section 6 which originally prohibited an issuer under that act from managing or operating a hospital project except as the lessor, vendor, or mortgagee of the hospital project. See Senate Amendment No. 2(4). Subsequent to that amendment, the House amended Senate Bill No. 243 to add to section 4 the prohibition which provides that in no event may any appropriation made by the legislature or an issuer pay any part of any operating cost of a hospital project. See House Amendment No. 4. Hence, we conclude that the legislature enacted the Hospital Project Financing Act intending section 4 of the act to preclude the use of county funds to support the operation and maintenance of a hospital project constructed or acquired under the provisions of that act, unless the funds are generated from the issuance and sale of bonds or from the operation of the hospital project or as revenues provided by a nonprofit corporation.

## S U M M A R Y

The Hospital Project Financing Act, article 4437e-2, V.T.C.S., precludes the issuer of bonds under that act from using county funds to pay the principal of or interest on such bonds or to support the operation and maintenance of a hospital project constructed with the proceeds from the sale of such bonds, unless the funds are revenues derived from the sale of the bonds themselves or from the operation of the hospital project or revenues provided by a nonprofit corporation.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton